IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 04 CR 1090 |
| v. | ) | Hon. Mark Filip |
| | ) | |
| JAMES DISMUKES, *et al.* | ) | |

MEMORANDUM OPINION AND ORDER
REGARDING DEFENDANTS' PRETRIAL MOTIONS

Before the Court are numerous pretrial motions filed on behalf of Defendants James Cross, Milton Patterson, and Marcus Robinson, as well as the consolidated response of the United States. The court addresses these motions below, and they are variously granted and denied (often as moot, given government concessions) as explained.

I.  Motions to Adopt

Defendants Cross, Patterson, and Robinson have each filed motions to adopt "any and all" pretrial motions filed by any co-defendant in the case. In response, the government does not object to the "expeditious resolution, without duplicative filings, of those routine motions generally applicable to all defendants." (D.E. 137 at 2.) The government acknowledges that several of the twenty-nine motions filed by the three Defendants so qualify. (*Id.* at 1.) However, the government does object to "generic, wholesale motions to adopt," by which a defendant may attempt to join a motion of a codefendant for which the analysis turns on the facts and circumstances related to the initial movant's situation. (*Id.* at 2.)

1

Some courts in this district have shown a willingness to grant defendants' motions to adopt, to the extent that a particular pretrial motion of one defendant applies equally to the other defendants. *See, e.g., United States v. Hoover*, No. 95 CR 508, 1997 WL 80947, *1 (N.D. Ill. Feb. 20, 1997) (Leinenweber, J.). In doing so, these courts have acknowledged that granting such motions to adopt may serve the interests of justice and judicial economy. *See United States v. Colon*, No. 97 CR 659, 1998 WL 214714, *1-2 (N.D. Ill. 1998) (Andersen, J.). In contrast, other courts in this district have flatly rejected motions to adopt, stating that "[i]t is not this court's duty to sift through the various pretrial motions and divine which motions of a co-defendant . . . are applicable to another defendant. Therefore barebones motions to adopt are routinely denied." *United States v. Sims*, 808 F. Supp. 596, 602 (N.D. Ill. 1992) (Alesia, J.) The caselaw suggests that the decision to grant or deny motions to adopt turns on the specifics of the motions filed. Thus, one court ruled, "the court declined to assume the burden in a case such as this, with over seventy motions pending, to ascertain which motions were applicable to which defendant(s). Defendants were directed to file statements listing the motions they wished to adopt." *United States v. Panno*, No. 86 CR 329, 1987 WL 11347, *1 n.1 (N.D. Ill. May 6, 1987) (Leinenweber, J).

The pretrial motions before the Court—other than minimalist, one-page motions to adopt and similar motions for leave to file additional motions—all largely relate to discovery requests. None contains facts specific to any one defendant, and all are (or at least appear to be) equally applicable to each defendant. Since the government acknowledges the interest of this Court in the expeditious resolution of all the motions, and since many of the motions are nearly identical and concern issues of generalized

2

concern, the Court grants the motions to adopt concerning the pending pretrial motions. The Court therefore will address the remaining motions as consolidated, as the government has in its response.

II.     Motion to Preserve Handwritten Notes of Government Agents

Defendants have moved for the Court to compel the government to preserve all handwritten notes taken by government agents during witness interviews, including all notes compiled between the date of the requested order and the date of any trial. The government responds that it has agreed, in its March 24, 2005 discovery letter to counsel, to instruct the case agent to ensure the preservation of government agents' notes. (D.E. 137 at 3.) The Court understands this concession to apply to notes previously compiled, and to the handwritten notes, if any, that may be compiled in interviews in the future. Since the government has agreed to preserve the notes in question, the court denies this motion as moot.

III.    Motion to Discover the Use of Electronic Devices

Defendants have moved to discover whether any electronic eavesdropping or recording devices have been used in the investigation of this case. Further, Defendants request permission to "inspect, audit and copy recorded results of any such use" of those devices, other than those materials already provided by way of the "2.04" materials. (*E.g.*, D.E. 130 at 1.) (By way of background, Local Criminal Rule 2.04 used to be the name of the local rule that principally dealt with pretrial disclosures by the government. That Rule has since been renumbered as Local Criminal Rule 16.1 and there is no more Local Criminal Rule 2.04. The Court understands the Defendants' reference to Rule "2.04" be a typographical anachronism that does not affect the gravamen of the

3

Defendants' request. Defendants should seasonably move to amend their motions if the Court's assumption is incorrect.)

The government responds that it has already disclosed to defense counsel all of the Title III materials relating to the wiretap on Defendant Cross's telephone, including recordings of intercepted conversations and all related materials. The government also explains that it "has also disclosed to counsel recordings of consensually-monitored conversations involving their particular defendant." (D.E. 137 at 3.)

The government objects to the discovery of any electronic device "that is not related to the present charges against these defendants." (*Id.*) However, Defendants have requested discovery only of electronic devices "utilized in the investigation of this case." (*E.g.*, D.E. 130 at 1.) As a result, the Court understands the government to have provided all applicable information relating to electronic devices utilized in this case, and on the basis of that understanding, the Court denies this motion as moot. To the extent the Court's understanding of the government's representation is incorrect, the government should seasonably notify the Court so that the Court can address any dispute that still exists.

IV. Motion for Disclosure of Expert Witness Testimony/Motion for Discovery and Inspection

Defendants have moved for discovery and inspection of a number of documents pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Defendant Robinson has also filed a separate motion for disclosure of expert witness testimony. Robinson requests notice of any experts the government intends to call sixty days before trial.

The government agrees to disclose a written summary of expert testimony it intends to use at trial, pursuant to Rule 16(a)(1)(G). (D.E. 137 at 5.) In response to the

4

request for disclosure sixty days before trial, the government responds that it initially was willing to provide this expert discovery three weeks before trial, but it will further accommodate Defendants' request by providing such information five weeks before trial. (*Id.*) The government also notes that the expected expert testimony will be routine in nature (*e.g.*, a forensic chemist, to testify that seized contraband is indeed a controlled substance) and may even be appropriate for potential stipulations—assuming, of course, that Defendants are amenable. (*Id.*)

Rule 16(a)(1)(G) does not include a provision requiring expert witness disclosure within a specific period of time prior to trial. Disclosure five weeks before trial is reasonable, given the nature of the case, the expected testimony, and the general practice in this district. Therefore, the Court orders the government to provide Rule 16(a)(1)(G) discovery to Defendants no later than five weeks prior to any trial.

Defendants' motions also include requests for disclosure pursuant to several subsections of Rule 16(a). The government responds that it has provided and will continue to provide "the discovery to which defendants are entitled under Fed. R. Crim. P. 16 and Local Rule 16.1." (*Id.* at 4.) Elsewhere in its response, the government acknowledges its continuing responsibilities to provide Defendants with information required under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), as well as that required under 18 U.S.C. § 3500 (the Jencks Act). (*Id.* at 6, 9.) The government objects, however, to several requests which it claims fall outside the scope of Rule 16 and the mandates of *Brady*, *Giglio*, and the Jencks Act. These include requests for

> [S]tatements known to or possessed by the government of persons with information relative to the defendant or the facts alleged in the indictment

5

> who are not prospective witnesses; statements of co-defendants or unindicted co-conspirators; the names, addresses, and criminal records of potential witnesses; the criminal records of co-defendants; and the names of government informers, agents, employees or special employees who in any way have knowledge of defendant, or of the facts alleged in the indictment.

(*Id.* at 5.)

The Court addresses these contested discovery requests individually below. In doing so, the Court notes that "[t]he Supreme Court has repeatedly stated that '[t]here is no general constitutional right to discovery in a criminal case . . .'" *United States v. Ollison*, No. 92 CR 365, 1995 WL 12300, *5 (N.D. Ill. Jan. 10, 1995) (Leinenweber, J) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). Therefore, to the extent that the requests fall outside the dictates of Rule 16, *Brady*, *Giglio*, and the Jencks Act, they will be denied.

A. Statements of Persons Who Are Not Prospective Witnesses

Defendants request statements of persons who are not prospective witnesses in this case. This request is improper. *See, e.g., United States v. National On Leong Chinese Merchants Ass'n*, No. 90 CR 760, 1991 WL 30673, *17 (N.D. Ill. Feb. 15, 1991) (Nordberg, J.) ("[T]he government is obligated to provide all exculpatory material under *Brady*, impeaching material under *Giglio*, and witness statements under the Jencks Act. These sources do not require production of non-witness statements, nor does Rule 16, nor will this Court."). Defendants have offered no authority in support of this request, and the motion is therefore denied as to this particular issue.

B. Statements of Co-Defendants or Unindicted Co-Conspirators

The government is not obligated to produce to the defendant statements made by co-conspirators, or any other individuals, except to the extent required by *Brady* or *Giglio*

6

doctrines or the Jencks Act. *See United States v. Swano*, No. 91 CR 477-02-03, 1992 WL 137588, *11 (N.D. Ill. June 1, 1992) (Leinenweber, J.) (collecting cases). Therefore, to the extent the request seeks statements not otherwise required by other discovery doctrines, the motion is denied. (At the risk of stating the obvious, if any piece of evidence was erroneously requested by Defendants on one basis (*e.g.*, under the Jencks Act), and the evidence is nonetheless discoverable on a different requested basis (*e.g.*, under the *Brady* or *Giglio* doctrines), that evidence must be produced.)

    C.    Names, Addresses, and Criminal Records of Potential Witnesses

The Seventh Circuit has taught that "[t]he law is clear . . . that the Constitution does not require that a defendant in a noncapital case be provided with a list of all prospective government witnesses." *United States v. Napue*, 834 F.2d 1311, 1317 (7th Cir. 1988) (citing *Weatherford v. Bursey*, 429 U.S. 545 (1977), and numerous Seventh Circuit precedents). Nor does Rule 16 entitle a defendant to such a list. *Napue*, 834 F.2d at 1317 (citing *United States v. Bouye*, 688 F.2d 471, 473-74 (7th Cir. 1982)). Though a criminal defendant has no right to a list of prospective witnesses, the Seventh Circuit also teaches that a district court has authority to require the government to provide such a list. *See Napue*, 834 F.2d at 1318 (citing *United States v. Jackson*, 508 F.2d 1001 (7th Cir. 1975)). This decision is within the district court's discretion, and the court may take into account the potential threat to the safety of prospective witnesses that such disclosure may pose. *Napue*, 834 F.2d at 1318. In the instant case, due to the nature of the crimes alleged in the indictment, the Court concludes that ordering release of the list of potential witnesses has the potential to pose a material risk of harm. Therefore, this request is denied. However, as is the common practice in this district, the Court will during trial

likely suggest or require each side to provide a list of likely witnesses for the next day, so that counsel can best focus their final preparations and review for cross-examinations.

  D. Criminal Records of Co-Defendants

Rule 16 does not require disclosure by the government of the criminal records of co-defendants. *See Sims*, 808 F. Supp. at 614 n.5 (holding that "criminal records of co-defendants are not discoverable under Rule 16."). Rule 16(a)(1)(D) requires only that the government, upon request of a defendant, furnish the defendant with the defendant's own criminal record. Defendants have offered no authority for their request, and it is respectfully denied.

  E. Names of Government Informants

Defendants seek the names of any government informants who have any knowledge of the facts alleged in the indictment. (*E.g.*, D.E. 113 at 3.) In objecting to this request, the government asserts the informant privilege to protect the identity of individuals who have provided information and will not be called as witnesses at trial. The Seventh Circuit teaches that the "[t]he government is granted this limited privilege as a right, and need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege." *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994). Furthermore, the Seventh Circuit has held that to defeat this privilege, the defendant must demonstrate a genuine need for the information. *United States v. Andrus*, 775 F.2d 825, 842 (7th Cir. 1985) (citation omitted); *accord Dole*, 870 F.2d at 372-73. Since the Defendants have failed even to attempt to demonstrate a genuine need in this instance, this request is denied without prejudice.

V. Motion for Disclosure of Exculpatory Evidence Including Impeaching Evidence (Motion for Disclosure of Agreements and Promises Made to Others)

Defendants have moved, pursuant to the principles set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), for an order compelling disclosure of all exculpatory evidence and impeaching information. Defendants seek such information that is within the possession, custody or control of the government, "or the existence of which is known or by the exercise of due diligence could become known to the government." (D.E. 114 at 1.) The government responds by acknowledging its responsibilities under *Brady* and *Giglio*, and the government agrees to provide any *Giglio* information in its possession up to four weeks before trial.

Under *Brady*, the government must produce upon request by the defendant any favorable evidence when that evidence is material either to the guilt, innocence, or punishment of the accused. *See United States v. Tufano*, No. 93 CR 623, 1993 WL 502363, *1 (N.D. Ill. Dec. 6, 1993) (Williams, J.). *Giglio* requires the government to turn over any material evidence that could be used to impeach government witnesses, including, for example, prior inconsistent statements, payments, and promises of leniency. *Id.* The government has agreed to abide by its responsibilities under *Brady* and *Giglio*. The Court orders the government to turn over all *Giglio* material no later than four weeks before trial.

The court declines to rule in the abstract on the discoverability of every type of arguable exculpatory information listed in the Defendants' motions—given the government's concession to provide all information required by law—because such questions sometimes only can fairly be evaluated in a concrete factual context. The government has agreed to abide by all of its *Brady/Giglio* obligations, and the

9

government obviously would proceed at its peril not to do so. If there are any concrete disagreements concerning *Brady/Giglio* issues in advance of trial, the parties may raise them with the Court.

VI.    Motion for Leave to File Additional Motions

Defendants Cross and Patterson have filed identical motions for leave to file additional motions "should such motions become necessary in light of government responses to defense motions or additional disclosures by the government." (*E.g.*, D.E. 127 at 1.) The government responds that it objects to the entry of such a blanket order, and it suggests that the Court evaluate any future motion(s) on a case-by-case basis to determine whether good cause exists to entertain such motion(s).

Rule 12(c) of the Federal Rules of Criminal Procedure gives a court discretion to set a deadline for pretrial motions, which this Court did. Under Rule 12(f), "failure by a party . . . to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c) . . . shall constitute waiver thereof, but the court for cause shown may grant relief from waiver." Fed. R. Crim. P. 12(f). Consistent with Rule 12(f), courts in this district have routinely denied motions for leave to file additional, future motions when made without a showing of need. *See, e.g., United States v. Ishola*, No. 95 CR 523, 1996 WL 197461, *1 (N.D. Ill. April 19, 1996) (Leinenweber, J.) ("Without a specific showing of need, the court denies these motions without prejudice.").

Defendants have had a fair and fulsome opportunity to submit any appropriate pretrial motions. The Court set, at defense request, generous deadlines so as to facilitate a full review of relevant materials. Accordingly, Defendants' motions for leave to file

10

additional, unspecified motions are denied without prejudice. If, at a later date, a defendant determines that additional motions are necessary, that defendant may, pursuant to a showing of good cause under Rule 12(f), file such motions with the Court.

VII.  Motions for A Pretrial Hearing to Determine the Admissibility of Declarations of Alleged Co-Conspirators

Defendants Patterson and Cross have submitted identical motions for a pre-trial hearing to determine the admissibility of declarations of alleged co-conspirators. Defendant Robinson has submitted a similar motion, though Robinson requests, in the alternative to a hearing, that the government be required to submit a *Santiago* proffer, as is the uniform or nearly uniform practice in this judicial district. *See generally United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978) (establishing the framework for the since-known *Santiago* proffer). Robinson requests the provision of a *Santiago* proffer by the government four weeks before trial.

The government responds by agreeing to provide a *Santiago* proffer two weeks before trial, the deadline it offered in its March 24, 2005, discovery letter to defense counsel. With regard to the pretrial hearing, the government objects on the grounds that such a hearing would be an inefficient means to determine admissibility of any co-conspirator statements in furtherance of the conspiracy, and the government notes that such hearings are disfavored by the Seventh Circuit.

The Court orders the government to provide a *Santiago* proffer three weeks before trial. Consistent with Seventh Circuit teaching, the Court will not hold any pre-trial hearing unless circumstances prove that one is necessary, as is the exception to the norm in this district. As the Seventh Circuit has instructed, "the use of pre-trial *Santiago* proffers can be an efficient method of making the preliminary Fed.R.Evid. 801(d)(2)(E)

11

determination." *United States v. Rodriguez*, 975 F.2d 404, 406 (7th Cir. 1992) (citing *United States v. Shoffner*, 826 F.2d 619, 630 (7th Cir. 1987)); *accord, e.g., Andrus*, 775 F.2d at 837. Courts in this district have followed this recommendation. *See, e.g., United States v. Dicaro*, No. 88 CR 923, 1989 WL 18340, *1 (N.D. Ill. Feb. 24, 1989) (Leinenweber, J.) (ordering *Santiago* proffer and stating that "[t]he preferable procedure in the Seventh Circuit for determining admissibility of co-conspirator declarations is to require the government to preview the evidence which it believes brings the statements within the co-conspirator rule.") (citing *Shoffner*, 826 F.2d at 630). In this case, ordering a separate pre-trial hearing is not necessary and would be inefficient. As mentioned, due to the size of the conspiracy and the lengthy indictment, the court orders the government to produce the *Santiago* proffer three weeks prior to trial.

VIII. Motions for Production of 18 U.S.C. § 3500 Materials

Defendants have moved for production of all statements and reports of witnesses and prospective witnesses, as well as any surveillance reports, recordings and data required by the Jenks Act (18 U.S.C. § 3500). The government responds that it agreed, in its March 24, 2005 discovery letter, to provide all Jencks Act material. Further, the government agrees to provide all known § 3500 material four weeks before trial. Accordingly, this motion is denied as moot.

IX. Motions to Require Notice of Intention to Use Identification Testimony at Trial

Defendants Cross and Patterson have filed identical motions to require notice by the government of its intention to use identification testimony at trial. The government objects to this request to the extent that it falls outside of *Brady*, *Giglio* or the Jencks Act, and the government asks the Court to deny the request as moot otherwise, because the

12

government has already agreed to provide *Brady/Giglio* and Jencks Act material substantially in advance of trial.

Defendants cite no authority in support of their request. To the extent that the Defendants seek information outside the scope of *Brady/Giglio* and Jencks Act material, the motion is denied without prejudice. The Court further notes that, as a practical matter, this issue may be of no material significance, as the government explains that the information requested in this motion will likely be included in the Jencks Act material and other related material. In any event, given Defendants' failure to cite any supporting authority, the motion is denied without prejudice.

X.  Motions to Require Notice of Intention to Use Other Crimes, Wrongs, or Acts Evidence

Defendants have moved to require the government to give notice of its intention to use Defendants' previous crimes, wrongs or acts evidence "either in its direct case, during the cross-examination of a Defendant or in its rebuttal case." (*E.g.*, D.E. 119 at 1.) Defendants request evidence of "other crimes, wrongs or acts" as that phrase is used in Fed. R. Evid. 404(b) and evidence of "specific instances of conduct" of any Defendant, as that phrase is used in Fed. R. Evid. 608(b).

   A.  Rule 404(b) Evidence

Defendants ask the Court to require the government to provide the following:

> The dates, times, places and persons involved in said other crimes, wrongs, or acts; [t]he statements of each participant in said other crimes, wrongs, or acts; [t]he documents which contain evidence of said other crimes wrongs or acts, including when the documents were prepared, who prepared the documents . . . and who has possession of the documents; and [t]he issue or issues on which the government believes such other crimes, wrongs or acts evidence is relevant within Fed. R. Evid. 404(b).

(D.E. 119 at 2 (internal numbering omitted).)

13

In response to these requests, the government acknowledges its obligation under Rule 404(b) to give notice of its intent to use such evidence in its case-in-chief. The government agrees to provide such information, pursuant to the "reasonable notice" requirement of Rule 404(b), two to four weeks before trial. The government does object, however, to the breadth of the motion, which it claims is overbroad. It asks that, to the extent that the requested information exceeds that required by Rule 404(b), Defendants' motion be denied.

Rule 404(b) provides, in relevant part: "[T]he prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the *general nature* of any such evidence [of other crimes, wrongs or acts] it intends to introduce at trial." *Id.* (emphasis added). As explained by Judge Leinenweber in *Swano*, the purpose of the disclosure requirement is to "reduce surprise and promote early resolution on the issue of admissibility." *Id.*, 1992 WL 137588, at *6 (citing Fed. R. Evid. 404(b) Notes of Committee on the Judiciary, Sen. Rep. No. 93-1277). *Swano* further instructed that Rule 404(b) "[i]t is not a tool for open-ended discovery." *Id.* Moreover, the disclosure requirement under Rule 404(b) applies to evidence the government will admit in its case-in-chief and does not include evidence that may be used only in cross-examination or rebuttal. *See Colon*, 1998 WL 214714, at *7 ("The plain language of the rule does not require notice of cross examination or rebuttal evidence and the defendants have not cited, nor have we discovered, any authority requiring such notice. Barring pretrial disclosure of the defendants' case and any potential defense witnesses, we find such notice would be impractical, if not impossible.").

14

As in *Swano*, Defendants here have requested discovery that far exceeds the "general nature" of the evidence the government intends to use under Rule 404(b). The *Swano* defendants also requested names, dates, times and places of others involved in the acts; statements of each participant; documents relating to the other acts; and a statement of the issues on which the government intended to introduce the evidence of other acts. And here, as in *Swano*, "[D]efendants seek disclosure well beyond the scope of Rule 404(b)." *Id.* Accordingly, Defendants' motion is denied to the extent that it exceeds the general nature requirement of Rule 404(b), and it is denied as moot to the extent that it falls within this requirement, as the government has agreed to provide the relevant discovery two to four weeks before trial. In terms of timing, the government should provide the requisite notice of such notice at least three weeks prior to trial.

B.  Rule 608(b) Evidence

Defendants have moved to require the government to provide evidence of "specific instances of conduct," and have made the same detailed request for names, dates, documents, and statements as they did in their 404(b) request. The government objects to this request, arguing that Defendants are not entitled to the information they seek, and therefore asks the court to deny this motion.

Courts in this circuit have repeatedly noted that Rule 608(b) is not a basis for the government to adduce evidence in its case in chief. *See, e.g., Colon*, 1998 WL 214714, at *6 ("Rule 608(b) restricts the use of specific instances of conduct of a witness for the cross examination of that witness."); *see also id.* ("Unlike Rule 404(b), however, Rule 608(b) does not require disclosure of any evidence which might be used for impeachment purposes."); *accord, e.g., United States v. Balogun*, 971 F. Supp. 1215, 1231 (N.D. Ill.

15

1997). Furthermore, "[i]t is well established that defendants are not entitled to access to any Rule 608(b) material which is not discoverable under Fed. R. Crim. P. 16." *Colon*, 1998 WL 214714, at *7 (citing *United States v. Hartmann*, 958 F.2d 774, 789 (7th Cir. 1992), and *United States v. Cerro*, 775 F.2d 908, 914-15 (7th Cir. 1985)). "Rule 16 explicitly limits compelled discovery to information the government intends to introduce during its case-in-chief." *Colon*, 1998 WL 214714, at *7 (citing Fed. R. Crim. P. 16). Because the language of Rule 16 limits the scope of compelled discovery to information the government intends to use in its case-in-chief, and because evidence of "specific instances of conduct" may not be introduced during the government's case-in-chief pursuant to Rule 608(b), it follows that 608(b) impeachment material is not a matter for compelled discovery under Rule 16. *See, e.g., Ollison*, 1995 WL 12300, at *8 (noting that "[i]n contradistinction to Rule 404(b), Rule 608(b) has no self-contained notice provision," that "Rule 608(b) is focused on impeachment," and that, "[t]hus, it is well-settled that the 'government is not required to disclose evidence of past crimes or misconduct that will be used on cross-examination.'") (quoting *United States v. Padilla*, 744 F. Supp. 1425, 1427 (N.D. Ill. 1990), and citing other authority). Defendants' motion for pretrial discovery of Rule 608(b) impeachment materials is denied.

XI.     Motion for a Bill of Particulars

Defendants have moved to require the government to provide a bill of particulars pursuant to Fed. R. Crim. P. 7(f). They have requested information on the time and place of the alleged offense, the method by which it was committed, identification of every informer and person the government plans to call as a witness, criminal records of any

16

prospective witnesses, and the names of unindicted co-conspirators. (*E.g.*, D.E. 106 at 1-2.)

The government argues that the motion should be denied, due to the detailed indictment and extensive discovery in this case. In support, the government notes that the decision to require a bill of particulars is within the discretion of the court (D.E. 137 at 11), and it urges the Court to find that the 37-count criminal indictment, the criminal complaint and accompanying fifty-page affidavit, and other pretrial discovery made available already have made a bill of particulars unnecessary.

"A court may order a bill of particulars whenever an indictment fails sufficiently to apprise a defendant of the charges against him." *Swano*, 1992 WL 137588, at *8 (citing *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981)). "The purpose of a bill of particulars is to insure that a defendant is able to prepare a defense and protect his double jeopardy rights. It is not a means to effect additional pre-trial discovery, and the government is not obligated to detail how it plans to prove its case." *Id.* (citing *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991)).

In addition, the Seventh Circuit has found that a court does not abuse its discretion in denying a motion for a bill of particulars where the "'indictment indicated the statute under which defendants were being charged, set forth each of the elements constituting a violation of that statute, and provided sufficient details regarding the defendants conduct for which they were being charged.'" *United States v. Osinski*, No. 04 CR 778, 2004 WL 2646702, *3 (N.D. Ill. 2004) (DerYeghaiyan, J.) (quoting *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003)). The Seventh Circuit also teaches that "an indictment under 21 U.S.C. § 846 is sufficient if it alleges a conspiracy to

17

distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated," even if it fails to allege any overt act in furtherance of the conspiracy. *United States v. Dempsey*, 806 F.2d 766, 769 (7th Cir. 1986) (internal quotation marks and citation omitted).

Like *Dempsey*, the present case centrally involves an alleged narcotics conspiracy. Count One of the indictment lays out the statutes violated, the time period of the conspiracy, the elements of the charges, and the details of the conspiracy. (D.E. 64 at ¶ 1-7.) Counts Two through Thirty-Seven further allege numerous, specific acts related to the conspiracy (which acts are also the subject of stand-alone charges against some defendants), and each count includes the date, the defendant(s) who allegedly were involved, and the statutes violated. The Court finds that this level of detail is more than enough to eliminate the need for a bill of particulars. This conclusion is reinforced by the fact that there was a prior criminal complaint which included an approximately fifty-page affidavit from the government. (D.E. 1.) There also has been extensive pretrial disclosure by the government months in advance of trial (for example, of the voluminous Title III materials). This material also gives the defendants fair notice (indeed, likely a roadmap) of the government's case. The defendants' motion is therefore denied.

XII.    Motion to Inspect Grand Jury Minutes

Defendant Cross has moved to inspect the grand jury minutes, the record of the votes cast by the grand jury in connection with the indictment, and all documents submitted to the grand jury. In the alternative, Cross has moved for the court to examine the grand jury transcript in camera "to determine whether probable cause existed based on the evidence presented to the Grand Jury." (D.E. 121 at 2.) In support of his motion,

Cross states he requires this information to "determine whether there was in fact the requisite number of grand jurors concurring in the findings of the true bill . . . to determine whether he has grounds for a motion to dismiss the indictment for reason of illegal and/or improper matters occurring before the Grand Jury, and to properly prepare his defense." (*Id.* at 1-2.) The government responds that the court should deny this motion because Cross has failed to show particularized need for this material. Relying on *United States v. Balogun*, 971 F.Supp. 1215, 1231-32 (N.D. Ill. 1997), the government argues that this motion constitutes an impermissible "fishing expedition" unauthorized by the law.

The motion is denied. To discover grand jury material, a "defendant must demonstrate a 'particularized need.'" *Ishola*, 1996 WL 197461, at *1 (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 220 (1979)). This is true because, as the government notes, the Seventh Circuit accords a presumption of regularity to grand jury proceedings which a defendant has a substantial burden of overcoming by a showing of irregularity. *See, e.g., United States v. Lisinski*, 728 F.2d 887, 893 (7th Cir. 1984) ("There is a presumption of regularity which attaches to such proceedings and the defendants have a difficult burden to prove any irregularity. Additionally, disclosure of grand jury proceedings will be had only upon demonstration by the party seeking disclosure of a compelling necessity or particularized need.") (numerous internal quotation marks and supporting citations omitted). Defendant Cross does not even attempt to show irregularity. He merely asserts that Rule 6(e) of the Federal Rule of Criminal Procedure requires that the requisite number of jurors concur in the findings of the true bill, and that it is necessary for him to inspect the grand jury minutes to make

19

sure nothing untoward occurred. If such a speculative basis were enough to warrant disclosure of grand jury transcripts, the presumption of regularity and secrecy would be meaningless. *Accord id.* ("'Rule 6(e) codifies the traditional practice of grand jury secrecy.'") (quoting *Matter of Grand Jury Proceedings, Miller Brewing Company*, 687 F.2d 1079, 1088 (7th Cir. 1982)).

Defendant Cross has failed to show any "particularized need" sufficient to overcome the presumption of regularity and the presumptive secrecy afforded to the work of the grand jury. Accordingly, the motion to inspect the grand jury minutes is denied without prejudice. *Accord Ishola*, 1996 WL 197461, at *1.

## Conclusion

As explained above, the Defendants' pretrial motions are granted in part and denied in part.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: July 28, 2005